UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ALANNA CRABAUGH**,

    Plaintiff,

v.

**DR. ROBERT SNIDER, et al.**,

    Defendants.

No. 3:16-cv-00880-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Defendants filed a Motion for Summary Judgment [13], arguing they are entitled to judgment in their favor because Ms. Crabaugh's claims are untimely and because she failed to exhaust her administrative remedies. For the reasons stated below, Defendants' Motion for Summary Judgment [13] is GRANTED in part and DENIED in part.

## BACKGROUND

    The series of events underlying this case began on December 6, 2012, when Ms. Crabaugh, an inmate in the custody of the Oregon Department of Corrections ("ODOC"), slipped while working in the kitchen at the Coffee Creek Correctional Facility ("CCCF"). As a result, Ms. Crabaugh allegedly injured her lower back, hips, sacrum, and coccyx. Ms. Caugaugh filed three grievances with the prison related to the incident and her ensuing injuries.

1 – OPINION AND ORDER

Pursuant to prison regulations, Ms. Crabaugh submitted a grievance, CCCF.2012.12.034, on December 20, 2012 ("the 2012 grievance"), where she grieved the allegedly unsafe conditions that caused her injury. Mr. Patrick Regan, a food services employee at CCCF, responded to the grievance on January 19, 2013. Ms. Crabaugh did not appeal the grievance after receiving Mr. Regan's response.

On November 1, 2013, Ms. Crabaugh submitted a second grievance, CCCF.2013.11.006 ("the 2013 grievance"), where she grieved her alleged lack of adequate medical care. Specifically, she grieved the denial of her request for an MRI, which she believed would show damage from the December 6, 2012 fall and explain the pain she continued to experience since the fall. On November 19, 2013, a nurse responded to the grievance. Ms. Crabaugh appealed the response on December 2, 2013. The appeal was denied on December 10, 2013, because Ms. Crabaugh failed to comply with the proper procedures for submitting a grievance appeal. Ms. Crabaugh did not resubmit the appeal or further proceed with the grievance in any other way.

On June 3, 2015, Ms. Crabaugh submitted a third grievance, CCCF.2015.06.003 ("the 2015 grievance"), which CCCF received and accepted on June 4, 2015. There, Ms. Crabaugh grieved her alleged lack of adequate medical care since the December 6, 2012 accident. Pursuant to policy, the grievance was initially returned to Ms. Crabaugh because she was involved in litigation related to the December 6, 2012 accident. Ms. Crabaugh resubmitted the grievance on June 19, 2015, after she had voluntarily dismissed the pending case. CCCF accepted the grievance, and the health services manager responded on July 1, 2015. Ms. Crabaugh eventually filed a first and second level appeal of the grievance, thereby exhausting the administrative remedies associated with her complaint in the grievance on October 19, 2015.

Defendants do not dispute that Ms. Crabaugh exhausted her administrative remedies as they relate to the 2015 grievance.

On May 20, 2016, Ms. Crabaugh brought a Section 1983 action against multiple defendants who work for ODOC.[1] The Complaint [1] alleges two claims for relief grounded in violations of Ms. Crabaugh's constitutional rights. The first claim alleges that Defendants were deliberately indifferent to Ms. Crabaugh's medical needs when they failed to provide her with adequate evaluation and treatment of her injuries that resulted from her fall on December 6, 2012. Her second claim alleges cruel and unusual punishment, as well as deliberate indifference to her medical needs, based on Defendants' failure to provide adequate and timely evaluation to care for her acute and chronic pain. Defendants have moved for summary judgment on both claims.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The initial burden for a motion for summary judgment is on the moving party to identify the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is satisfied, the burden shifts to the non-moving party to demonstrate, through the production of evidence listed in Fed. R. Civ. P. 56(c)(1), that there remains a "genuine issue for trial." *Celotex*, 477 U.S. at 324. The non-moving party may not rely upon the pleading allegations. *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995) (citing Fed. R. Civ. P 56(e)). All reasonable doubts and inferences to be drawn from the facts are

---

[1] This is Ms. Crabaugh's second legal action related to the December 6, 2012 accident. She also brought a legal action on December 5, 2014, where she asserted claims against prison officials for the unsafe conditions that led to her accident at CCCF and the alleged inadequate treatment she received as a result. She voluntarily moved to dismiss that case without prejudice, which the Court granted on May 29, 2015.

3 – OPINION AND ORDER

to be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Defendants argue they are entitled to summary judgment for several reasons. First, they argue that Ms. Crabaugh's claims are barred by the statute of limitations. Second, they argue that Ms. Crabaugh failed to exhaust her administrative remedies as to the 2012 and 2013 grievances, thereby limiting her claims and damages to the allegations raised in the 2015 grievance. Third, Defendants argue that the 2015 grievance applies only to Dr. Shelton, entitling all other defendants to summary judgment.

For the reasons discussed below, Defendants are entitled to summary judgment on Ms. Crabaugh's first claim for relief because it is untimely. As to her second claim, she exhausted her administrative remedies as to Dr. Shelton. But all other Defendants are entitled to summary judgment because she failed to exhaust her administrative remedies against them.

### I. Statute of Limitations

Defendants argue Ms. Crabaugh's claims are not timely since the underlying injury occurred more than two years before she brought this case. Ms. Crabaugh responds that her claims fall within the statute of limitations because Defendants' deliberate indifference to her medical care is ongoing.

In Oregon, Section 1983 claims must be filed within two years of when a claim has accrued. *Sain v. City of Bend*, 309 F.3d 1134, 1139-40 (9th Cir. 2002); s*ee also Lukovsky v. City and Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) ("Accrual is the date on which the statute of limitations begins to run."). A claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lukovsky*, 535 F.3d at 1048

(citation omitted). "When a tort involves continuing wrongful conduct," however, "the statute of limitations doesn't begin to run until that conduct ends." *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (citing *Page v. United States*, 729 F.2d 818, 821 (D.C. Cir. 1984)). This is called the "continuing tort doctrine," and it "applies where there is 'no single incident' that can 'fairly or realistically be identified as the cause of significant harm.'" *Id.* (citation omitted).

    A.    *Claim One*

Ms. Crabaugh's first claim specifically stems from the alleged inadequate treatment she received for the "sacral fracture and coccydynia" that she sustained from the December 6, 2012 accident. It is clear the events that led to her accident are well outside of the statute of limitations. In theory, however, Ms. Crabaugh could still bring a claim for the Defendants' ongoing failure to treat the injuries that resulted from the accident if she continued to seek treatment for those injuries within the statute of limitations period. According to the Complaint, a doctor first examined Ms. Crabaugh on December 12, 2012. She received x-rays in December 2012 and March 2013, to determine the extent of her injuries. She also received a lower bunk in March 2013, after requesting one in December 2012. In October 2013, she was prescribed physical therapy, and on December 8, 2013, she was provided a donut-shaped cushion to help relieve pain when sitting.

Ms. Crabaugh does not allege that she requested any further medical treatment for the sacral fracture and coccydynia after receiving the cushion. Accordingly, even if I find that the alleged inadequate treatment for the sacral fracture and coccydynia constituted a continuing tort, the statute of limitations for that claim would have accrued on December 8, 2013. Therefore, Ms. Crabaugh had until December 8, 2015 to bring a claim against Defendants.

Because Ms. Crabaugh did not bring this claim until May 20, 2016, it is well outside of the statute of limitations. Moreover, Ms. Crabaugh has not argued that the statute of limitations should be tolled. Accordingly, Defendants are entitled to summary judgment on the first claim because it is untimely.

### B.   *Claim Two*

Ms. Crabaugh's second claim for relief alleges that she was subject to cruel and unusual punishment as a result of Defendants' deliberate indifference to her medical needs when they failed to properly evaluate and care for her acute and chronic pain. This claim also relates to injuries she sustained from the December 6, 2012 accident. The allegations in the Complaint suggest that Ms. Crabaugh was not referred to a women's health specialist until May 18, 2015—two-and-a-half years after the accident—even though she continually complained of pain in her pelvic region. She claims she endured years of untreated pain because of that delay.

Ms. Crabaugh's second claim for relief falls within the statute of limitations. The alleged inadequate treatment occurred through at least May 18, 2015, when Ms. Crabaugh first saw a women's health specialist. Accordingly, events related to the second claim for relief occurred within the two years preceding the date on which Ms. Crabaugh filed her complaint in this case. Therefore, Defendants are not entitled to summary judgment on her second claim because it is not untimely.

## II.   **Exhaustion of Administrative Remedies**

Defendants argue that Ms. Crabaugh's allegations of deliberate indifference before the initiation of her 2015 grievance proceedings should be dismissed because she failed to exhaust her administrative remedies. In addition, Defendants argue that the 2015 grievance applies only to Dr. Shelton, and all other Defendants should be dismissed from this case. Ms. Crabaugh

argues that her 2015 grievance fully exhausts her administrative remedies against all Defendants. Since the 2015 grievance specifically complained of a "pattern and practice" of failing to provide adequate care, Ms. Crabaugh appears to argue that she may seek redress for all inadequate pain treatment that occurred since December 6, 2012. Alternatively, Ms. Crabaugh argues that requiring her to have exhausted her administrative remedies before bringing this Complaint violates her constitutional equal protection rights.

### A.     *Exhaustion*

Under the Prison Litigation Reform Act ("PLRA"), an inmate must exhaust all available administrative remedies prior to filing a complaint under Section 1983. *Porter v. Nussle,* 534 U.S. 516, 524 (2002). Ultimately, failure to exhaust administrative remedies is an affirmative defense on which Defendants bear the burden of proof. *Jones v. Bock*, 549 U.S. 199, 212 (2007).

Here, it is clear that Ms. Crabaugh failed to complete the grievance process for her 2012 and 2013 grievances and, thus, she failed to exhaust her administrative remedies as to those grievances. But Defendants acknowledge that Ms. Crabaugh completed the grievance process for her 2015 grievance. According to Ms. Crabaugh, that grievance complained of "DOC's pattern and practice of delaying and deferring outside consultations," which she claimed aggravated her medical condition, caused substantial pain, degraded her physical condition, and put her at risk of "ongoing and perhaps permanent debilitation." On its face, it appears this grievance relates to Ms. Crabaugh's second claim for relief. Thus, since she exhausted the grievance procedures for the 2015 grievance, I find that she exhausted her administrative remedies as they relate to her second claim for relief.

That said, all Defendants except Dr. Shelton argue they are entitled to summary judgment on the grounds that Dr. Shelton was the only party named in the 2015 grievance. Ms. Crabaugh

argues that her grievance concerned the prison's "pattern and practice" of providing inadequate treatment, which necessarily concerned the health care decisions of multiple individuals, and that ODOC accepted the grievance as written. Specifically, she states:

> Nothing in the handling of the Grievance indicates that the separate attention of each of the State Defendants was needed. Presumably if those writing the responses required greater clarity as to who was involved in Plaintiff's medical treatment, they would have said so. They did not.

Accordingly, Ms. Crabaugh asserts that the 2015 grievance, even if it only named Dr. Shelton, served to exhaust her administrative remedies against all of the defendants she named in her Complaint because (1) they were all involved in her medical treatment and (2) ODOC accepted the grievance. In other words, Ms. Crabaugh is arguing that ODOC should have rejected her grievance and told her to submit a grievance for each individual involved in her health care if that is what ODOC actually required.

Ms. Crabaugh's argument about whether her grievance adequately exhausted her administrative remedies against all Defendants misses the mark. It is true that exhaustion is not "*per se* inadequate simply because an individual later sued" was not named in the grievance. *Jones*, 549 U.S. at 219. Instead, the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim," since the prison's requirements define the boundaries of proper exhaustion. *Id.* at 218. Oregon's rules for exhaustion allow the inmate to grieve one "matter, action, or incident" per grievance. Or. Admin. R. 291-109-0140(1)(d) (2017). But, inmates must submit separate grievances for each individual. Or. Admin. R. 291-109-0140(5) (2017).

Here, it is clear that the 2015 grievance related to a single matter—the continuing failure to provide Ms. Crabaugh with adequate treatment for her chronic pain. Ms. Crabaugh only named Dr. Shelton in that grievance. It is entirely possible that Dr. Shelton alone could have

8 – OPINION AND ORDER

engaged in a pattern and practice of failing to adequately care for Ms. Crabaugh's pain and, therefore, the grievance would stand as written.  Ms. Crabaugh has not provided any evidence to substantiate the inference that ODOC somehow knew that the grievance pertained to the actions of more individuals than just Dr. Shelton.  Accordingly, while the 2015 grievance serves to exhaust Ms. Crabaugh's administrative remedies regarding her second claim for relief, it only applies to the actions of Dr. Shelton.  All other Defendants are entitled to summary judgment in their favor.[2]

### B.    *Equal Protection Challenge*

Alternatively, Ms. Crabaugh argues that the PLRA's exhaustion requirements should not apply to her because doing so violates principles of equal protection, and it subjects her to cruel and unusual punishment.  Specifically, Ms. Crabaugh argues that the PLRA violates her right to equal protection under the law because a non-inmate could bring a similar claim for relief without having to exhaust administrative remedies.

Ms. Crabaugh's equal protection challenge is meritless.  "Legislation that does not burden a suspect class or affect fundamental rights satisfies the equal-protection requirement if the legislature could think the rule rationally related to any legitimate goal of government." *Johnson v. Daley*, 339 F.3d 582, 585 (7th Cir. 2003).  Prisoners are not a suspect class.  *Id.* at 585-86; *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998).  The right at issue here is Ms. Crabaugh's access to seek redress in court for alleged constitutional violations by prison officials.  It is clear, however, that the "scope of the right of access to the courts is quite limited." *Madrid v. Gomez*, 190 F.3d 990, 995 (9th Cir. 1999).  Accordingly, the exhaustion requirements

---

[2] In making this ruling, I do not decide whether Ms. Crabaugh's second claim for relief against Dr. Shelton constitutes a continuing tort violation.  That issue has not been raised or argued by the parties.

9 – OPINION AND ORDER

of the PLRA need only be rationally related to legitimate government interests. *Mason v. Bridger*, 261 F. App'x. 225, 230 (11th Cir. 2008).

The PLRA serves legitimate government interests. Namely, the PLRA was enacted to "reduce the quantity and improve the quality of prisoner suits," and the exhaustion requirement affords "prison officials 'time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Ms. Crabaugh does not claim she was in any way stopped by the prison from exhausting her administrative remedies against each Defendant, or that administrative redress was effectively unavailable to her. She simply claims she did not think she needed to file a grievance for each Defendant. That is not an equal protection violation.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment [13] is GRANTED in part and DENIED in part. Ms. Crabaugh's first claim for relief is DISMISSED with prejudice. Ms. Crabaugh's second claim for relief is DISMISSED as to all Defendants besides Dr. Shelton.

IT IS SO ORDERED.

DATED this __8th__ day of March, 2017.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
Chief United States District Judge